# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TASHAYHA GILMER,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | No. 2:17-CV-0845-DMC<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).[1] Pursuant to the written consent of all parties (Docs. 10 and 21), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' briefs on the merits (Docs. 25, 27, and 30).

///

///

///

---

[1] The action was initiated by Michelle Tanya Maroney, who was the claimant at the agency level. Upon Ms. Maroney's death in October 2017, her adult daughter was substituted as plaintiff in this action pursuant to Federal Rule of Civil Procedure 25(a). See Doc. 15 (December 21, 2017, order).

1

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

> Step 1     Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

/ / /

/ / /

| | | |
|---|---|---|
| Step 2 | | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d

///

1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

## II.  THE COMMISSIONER'S FINDINGS

Claimant applied for social security benefits on December 6, 2012.  See CAR 23.[2] In the application, plaintiff claims disability began on November 13, 2012.  See id.  She alleged disability to due to idiopathic thrombocytopenic purpura (ITP), depression, and anxiety.  See id. at 28 (citing Exhibit 1E).  Claimant's claim was initially denied.  Following denial of reconsideration, claimant requested an administrative hearing, which was held on September 9, 2015, before Administrative Law Judge (ALJ) Maxine R. Benmour.  In a January 5, 2016, decision, the ALJ concluded claimant was not disabled based on the following relevant findings:

1. The claimant had the following severe impairment(s): idiopathic thrombocytopenic purpura (ITP), status post splenectomy; left knee patella dislocation; anxiety; and depression;

2. The claimant did not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant had the following residual functional capacity: sedentary work; she could lift and/or carry 10 pounds frequently and 20 pounds occasionally; she could sit for six hours in an eight-hour workday and stand and/or walk for two hours in an eight-hour workday; she could not climb and must have avoided even moderate exposure to hazards; she was limited to simple, repetitive tasks with occasional contact with supervisors and co-workers; every one to two months, she would have missed work for three hours because of her need for infusions;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant could have performed.

See id. at 25-33.

After the Appeals Council declined review on March 23, 2017, this appeal followed.

---

[2] Citations are the to the Certified Administrative Record (CAR) lodged on October 3, 2017 (Doc. 13).  Disposition of plaintiff's arguments has not required citation herein to the Supplemental Administrative Transcript lodged on April 23, 2018 (Doc. 23).

# III. DISCUSSION

In her opening brief, plaintiff argues: (1) the ALJ erred by failing to consider all relevant non-opinion medical evidence; (2) the ALJ failed to property evaluate medical opinions rendered by Drs. Kiefer and Tang, and Licensed Clinical Social Worker (LCSW) Lynnell Morris; (3) the ALJ failed to provide sufficient reasons for finding claimant's statements and testimony not credible; (4) the ALJ failed to adequately evaluate lay witness evidence provided by claimant's mother, Marie A. Sneed; and (5) the ALJ erred by relying on vocational expert testimony that was not based on an accurate description of claimant's residual functional capacity.

**A.** **<u>Non-Opinion Medical Evidence</u>**

Citing 20 C.F.R. § 404.1512, plaintiff argues the ALJ failed to comply with the Commissioner's regulations by not considering the following evidence:

| | | |
|---|---|---|
| Exhibit 5F | Treatment records from 2011.  CAR 931-1075. | |
| Exhibit 6F | Treatment records from 2012.  CAR 1076-1201. | |
| Exhibit 7F | Treatment records from 2014.  CAR 1202-1288. | |
| Exhibit 10F | Treatment records from March 2015.  CAR 1711-1750. | |
| Exhibit 11F | Treatment records from March 2015.  CAR 1751-1870. | |
| Exhibit 12F | Treatment records from April 2015.  CAR 1871-1893. | |
| Exhibit 13F | Treatment records from August 2015.  CAR 1894-2172. | |
| Exhibit 16F | Treatment records from July through September 2015.  CAR 2250-2336. | |
| Exhibit 17F | Treatment records from February 2012 through September 2015.  CAR 2337-2348. | |
| Exhibit 18F | Treatment records from October 2012 through September 2015.  CAR 2349-2364. | |
| Exhibit 19F | Medical Assessment from Lynnell Morris, LCSW, dated October 6, 2015.  CAR 2365-2368. | |

According to plaintiff, the ALJ engaged in "cherry picking" by ignoring this evidence.

/ / /

/ / /

Pursuant to 20 C.F.R. § 404.1512(d), the Commissioner must develop the claimant's complete medical history "for at least the 12 months preceding the month" the application is filed, unless the claimant alleges an onset date within 12 months preceding the filing date. If, as here, the alleged onset date is within 12 months preceding the filing date, the regulations require the Commissioner to develop the complete medical history beginning with the month the claimant alleges onset of disability. See § 404.1512(d)(2). In this case, claimant alleged disability beginning November 2012. The court, therefore, rejects at the outset any claim the ALJ failed to comply with 20 C.F.R. § 404.1512 as to non-opinion medical evidence predating November 2012.

Next, though plaintiff bears the burden of persuasion by seeking judicial review of alleged ALJ errors, plaintiff fails to make any effort in her briefs to meet this burden. Notably, plaintiff does not identify the content of any of the listed exhibits, or how they undermine any of the ALJ's findings. Because plaintiff has not pointed to some objective finding contained in these exhibits which would tend to undermine the ALJ's findings, the court cannot say plaintiff has established a violation of the regulation discussed above regarding the Commissioner's responsibility to develop the record. For the same reason, the court is unable to conclude the ALJ in fact did not consider these exhibits, despite the ALJ's repeated statements throughout the decision that the entire record was considered.

Plaintiff has cited no authority supporting her conclusion the ALJ errs by failing to include in the hearing decision a discussion of every item of evidence. To the contrary, the ALJ need not discuss all evidence presented. See Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Rather, the ALJ must explain why "significant probative evidence has been rejected." Id. (citing Cotter v. Harris, 642 F.2d 700, 706 (3d Cir.1981). Applying this standard, the court held the ALJ properly ignored evidence which was neither significant nor probative. See id. at 1395.

/ / /

/ / /

/ / /

The court presumes treatment records tend to be probative of a claimant's medical condition. The court also presumes most such records are significant and probative to the extent they relate to impairments and symptoms alleged by the claimant. The question, then, becomes whether the ALJ provided an explanation for rejecting treatment records. As discussed below, the ALJ in this case clearly provided explanations where medical opinion evidence was rejected. There is simply no reason to also presume the ALJ did not, as she stated throughout the hearing decision, consider all the other medical evidence and accept that evidence unless explicitly rejected.[3]

**B.     Medical Opinions**

1.     The ALJ's Analysis

At Step 4 of the sequential evaluation process, the ALJ evaluated the medical opinions of record to determine claimant's residual functional capacity. See CAR 27-32. Regarding claimant's physical limitations, the ALJ gave the opinions of Dr. Suga "greatest weight," the opinions of Dr. Tang "great weight," and assigned "less weight" to the opinions of the agency reviewing doctors. Id. at 30. As to claimant's mental limitations, the ALJ gave the opinions of Drs. Suskin, Kiefer, and Foret, as well as those rendered by the agency reviewing doctors, "great weight." Id. at 31. It does not appear the ALJ rejected any medical opinions regarding claimant's mental limitations.

As to Dr. Tang, who opined regarding claimant's physical limitations, the ALJ stated:

> The claimant was examined at the request of the State agency on April 23, 2013, by Robert Tang, M.D. (Exhibit 3F). The claimant described her medical history, with the early 2012 diagnosis of ITP with platelet count at 2K to 4K and current platelet count at 170K. She stated that she could take care of her personal needs and she could complete house chore duties

---

[3] In this regard, the court makes two additional observations. First, if ALJs were required to discuss every piece of evidence, including evidence they do not "reject," hearing decisions involving records consisting of over 2,800 pages, as in this case, would approach the same length, rendering the administrative process unworkable. Second, the court is hard-pressed to imagine any scenario in which an ALJ would "reject" routine treatment records without explaining why. Without also discussing every page of the instant record and thereby asking those interested to review a 2,800-page opinion, and except as discussed herein with respect to evidence provided by Ms. Morris at Exhibit 19F, the court has reviewed the record and finds no such scenario suggested by the exhibits plaintiff claims the ALJ improperly failed to discuss.

episodically. She also indicated that she was looking for work. She was taking Prozac for depressive symptoms, along with Prednisone, Metoprolol, Hydrochlorothiazide, Pepcid, and Vitamin D. There were no significant clinical findings; for example, her gait was normal, she had normal range of motion of her spine and joints, normal motor strength and tone, and normal sensory and reflexes. Dr. Tang assessed few physical limitations: frequent climbing and avoiding working at heights.

* * *

. . .Dr. Tang's opinion is assigned great weight. . ., based on his personal examination of the claimant and his familiarity with the Social Security program requirements.

CAR 30.

As to Dr. Kiefer, who opined as to claimant's mental limitations, the ALJ stated:

> The claimant was examined at the request of the State agency on April 23, 2013, by John Kiefer, Psy.D. (Exhibit 2F). She drove to the interview and completed the questionnaire independently. She described feeling depressed after the birth of her fourth child, then 17 months old. She stated that she was laid off from her previous job. She described being able to cook simple meals, do housekeeping, shop, and do the laundry. On mental status examination, she was cooperative, made good eye contact, had a neutral attitude, was logical and goal directed, and her speech was normal, her thought content was appropriate, and there were no signs of psychotic symptoms. She described her mood as bad, depressed, and angry. Her affect was restricted and congruent with her mood. She mentioned that her sleep was not good because her daughter was teething. Her recent and remote memory were good, she had a good fund of knowledge, and she could calculate simple problems. Her concentration was within normal limits, she could follow a three-step command, and her abstract thinking was normal. Dr. Kiefer diagnosed an adjustment disorder with depressed mood, rule out a mood disorder NOS due to Prednisone. He assessed a GAF [Global Assessment of Functioning] of 60, indicating mild symptoms. He opined that she would have no more than fair to moderate limitations in any aspect of work-related activity.
>
> * * *
>
> The medical records and the conclusions by Dr. Kiefer are consistent, describing the claimant with moderate symptoms of depression and/or anxiety. No treating or evaluating therapist, psychologist, or psychiatrist assessed the claimant with worse than moderate symptoms, and she appeared to improve somewhat with medication. Therefore, while it is reasonable to assess some related limitations, there is no reason to believe that the claimant's psychological impairment imposed limitations that would preclude regular work activity that is simple and repetitive, with only occasional contact with supervisors and co-workers. . . .

CAR 31.

The ALJ gave Dr. Kiefer's opinion "great weight." Id.

8

2. Plaintiff's Contentions

As to both Drs. Tang and Kiefer, plaintiff argues the ALJ erred in assigning "great weight" to their opinions because they were not based on a review of all relevant medical evidence, contrary to the requirements of 20 C.F.R. § 404.1517. As to Dr. Kiefer specifically, plaintiff notes Dr. Kiefer consistently described claimant's abilities as "fair." According to plaintiff, the ALJ erred because:

> The ALJ did not mention in the decision what the definition of "fair" means in the context of a person with limitations. The Diagnostic & Statistical Manual-III states the definition of "fair" as follows:
>
> "Moderate impairment in social relations in either social relations or occupational functioning, or some impairment in both."

Plaintiff also argues the ALJ erred by failing to address "Dr. Kiefer's opinion about the [claimant's] moderate likelihood of emotionally deteriorating in the work environment. . ." and thereby "cherry picking" from the evidence to support the ALJ's conclusions. Finally, plaintiff contends the ALJ erred by failing to mention a mental assessment provided by Licensed Clinical Social Worker Lynnell Morris.

3. Applicable Legal Standards

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ

provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

### 4. Disposition

Plaintiff first argues the ALJ improperly relied on opinions rendered by Drs. Tang and Kiefer as substantial evidence because the doctors were not provided with all medical records pursuant to 20 C.F.R. § 1517. Section 1517 states the Commissioner will provide consultative examiners "any necessary background information about your condition." The regulation, however, does not define "necessary background information" to include medical records. Thus, the court is not persuaded a violation of § 1517 occurred. In any event, an "examining physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

Next, plaintiff asserts the ALJ erred with respect to Dr. Kiefer due to some misunderstanding of the meaning of the word "fair" in the context of describing claimant's abilities for purposes of a social security evaluation. According to plaintiff, "fair" means "Moderate impairment." As to Dr. Kiefer, the ALJ stated: "He opined that [the claimant] would have no more than fair to moderate limitations in any aspect of work-related activity." CAR 31. It is apparent to this court the ALJ accepted plaintiff's understanding of "fair" to mean either "fair" or "moderate." It is clear the ALJ did not understand "fair" to mean more than "moderate," such as "marked," or "extreme."

Plaintiff next argues the ALJ erred by ignoring "Dr. Kiefer's opinion about the [claimant's] moderate likelihood of emotionally deteriorating in the work environment. . . ." In his report, Dr. Kiefer stated: "The likelihood of the claimant emotionally deteriorating in the work environment is moderate." CAR 684 (Exhibit 2F). To the extent this statement constitutes an opinion regarding plaintiff's mental capabilities in a work setting, the ALJ accepted all of Dr. Kiefer's opinions, giving them "great weight," and limited claimant to only occasional contact

with supervisors and co-workers in describing claimant's residual functional capacity. CAR 27, 31. Plaintiff's argument is unpersuasive because she has not demonstrated how the ALJ failed to account for the doctor's finding.

Finally, plaintiff argues the ALJ erred by failing to discuss an assessment offered by Ms. Morris, a Licensed Clinical Social Worker with claimant's treating provider, Kaiser Permanente. Ms. Morris' October 6, 2015, report is contained in the record at Exhibit 19F. See CAR 2365-67. Ms. Morris rated claimant as no more than moderately limited in any category of mental functioning. See id. at 2367. The court agrees with plaintiff to the extent it is clear the ALJ did not discuss Ms. Morris' report in the hearing decision.

The court, however, does not find any legal error. Ms. Morris is a Licensed Clinical Social Worker and, as such, is not an acceptable medical source. See Turner, 613 F.3d at 1223-24; see also 20 C.F.R. § 404.1527(b). It is not apparent whether Ms. Morris would nonetheless qualify as an acceptable medical source under 20 C.F.R. § 404.1527(f)(1), which would impact the standard the ALJ should apply in evaluating the evidence. In any event, regardless of the standard applied to the evidence, the ALJ is not required to discuss all evidence but must explain why significant probative evidence is rejected. See Vincent, 739 F.3d at 1394-95. In this case, the ALJ did not err because she did not reject Ms. Morris' findings. To the contrary, the ALJ accepted the opinions of every other doctor who opined to no more than moderate limitations and incorporated restrictions consistent with such limitations in her residual functional capacity finding.

Even if the court were to conclude the ALJ erred by failing to specifically discuss Ms. Morris' assessment, any error would be harmless. The Ninth Circuit has applied harmless error analysis in social security cases in a number of contexts. For example, in Stout v. Commissioner of Social Security, 454 F.3d 1050 (9th Cir. 2006), the court stated that the ALJ's failure to consider uncontradicted lay witness testimony could only be considered harmless ". . . if no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Id. at 1056; see also Robbins v. Social Security Administration, 466 F.3d 880, 885 (9th Cir. 2006) (citing Stout, 454 F.3d at 1056). Similarly, in Batson v. Commissioner of

Social Security, 359 F.3d 1190 (9th Cir. 2004), the court applied harmless error analysis to the ALJ's failure to properly credit the claimant's testimony. Specifically, the court held:

> However, in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied there was substantial evidence supporting the ALJ's decision. Any error the ALJ may have committed in assuming that Batson was sitting while watching television, to the extent that this bore on an assessment of ability to work, was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible.

Id. at 1197 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990)).

In Curry, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the claimant's age and education. The Ninth Circuit also considered harmless error in the context of the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a medical opinion. See Widmark v. Barnhart, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

The harmless error standard was applied in Carmickle v. Commissioner, 533 F.3d 1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility. Citing Batson, the court stated: "Because we conclude that . . . the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error." See id. at 1162. The court articulated the difference between harmless error standards set forth in Stout and Batson as follows:

> . . . [T]he relevant inquiry [under the Batson standard] is not whether the ALJ would have made a different decision absent any error. . . it is whether the ALJ's decision remains legally valid, despite such error. In Batson, we concluded that the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but that such error did not affect the ALJ's decision, and therefore was harmless, because the ALJ's remaining reasons *and ultimate credibility determination* were adequately supported by substantial evidence in the record. We never considered what the ALJ would do if directed to reassess credibility on remand – we focused on whether the error impacted the *validity* of the ALJ's decision. Likewise, in Stout, after surveying our precedent applying harmless error on social security cases, we concluded that "in each case, the ALJ's error . . . was inconsequential to the *ultimate nondisability determination*."
>
> Our specific holding in Stout does require the court to consider whether the ALJ would have made a different decision, but significantly, in that case the ALJ failed to provide *any reasons* for rejecting the evidence at issue. There was simply nothing in the record for the court to review to determine

whether the ALJ's decision was adequately supported.

Carmickle, 533 F.3d at 1162-63 (emphasis in original; citations omitted).

Thus, where the ALJ's errs in not providing any reasons supporting a particular determination (i.e., by failing to consider lay witness testimony), the Stout standard applies and the error is harmless if no reasonable ALJ could have reached a different conclusion had the error not occurred. Otherwise, where the ALJ provides analysis but some part of that analysis is flawed (i.e., some but not all of the reasons given for rejecting a claimant's credibility are either legally insufficient or unsupported by the record), the Batson standard applies and any error is harmless if it is inconsequential to the ultimate decision because the ALJ's disability determination nonetheless remains valid.

Assuming the ALJ erred by failing to discuss Ms. Morris' assessment, the Stout standard applies and the error is harmless if no reasonable ALJ considering the assessment could have reached a different disability conclusion. Such is the case here because, as discussed above, Ms. Morris opined as to moderate mental limitations consistent with every other medical opinion of record regarding claimant's mental capabilities. Therefore, Ms. Morris' report is cumulative and would not have persuaded any other ALJ a different outcome is warranted.[4]

**C.      Credibility**

At Step 4, the ALJ evaluated the credibility of claimant's statements and testimony to determine her residual functional capacity. See CAR 27-30. The ALJ found claimant's statements and testimony "not entirely credible." Id. at 28. Though plaintiff contends the ALJ erred with respect to this analysis, her argument is entirely conclusory, consisting of nothing of substance beyond the following statements: "In this case the reason's [sic] espoused by the ALJ were not *legitimate*," (emphasis in plaintiff's brief); and ". . .the ALJ's reasons do not pass muster." Given the absence of any guidance from plaintiff as to why the ALJ's analysis is flawed

///

---

[4] For the same reason, any error is harmless under the Batson standard because the result would have been the same even had the ALJ discussed the evidence. The underlying characteristic of Ms. Morris' report directs the same result under both standards – the report is cumulative.

13

and any rationale to gainsay it apparent upon review of the hearing decision and the record as a whole, this court is disinclined to disturb the ALJ's adverse credibility finding.

### D. Lay Witness Evidence

At Step 4, the ALJ considered lay witness evidence consisting of a statement submitted by claimant's mother, Marie A Sneed. CAR 28. As to Ms. Sneed, the ALJ stated:

> The claimant's mother, Marie A. Sneed, wrote in March 2013 that she saw the claimant about four times a month for shopping, laundry, and watching television (Exhibit 5E). She observed that the claimant appears weak with poor focus, but she is able to take care of her four children, provide clothing and meals, and take them to school, the doctor, and daycare. She also takes them to school activities. Ms. Sneed noted that the claimant can drive, shop, and count change. She also observed that the claimant cannot watch television often because she has small children to care for. She estimated that the claimant can walk one-quarter of a mile at a time, has to reread instructions, and has difficulty handling stress and changes in routine. . . .

Id.

The ALJ gave Ms. Sneed's statement "only some weight," finding it "inconsistent with the medial evidence and residual functional capacity." Id. The ALJ did not comment on a second report submitted by Ms. Sneed in September 2015.

According to plaintiff:

> . . .In this case, the ALJ only commented on the statement of Ms. Sneed found in the first statement. **See AR 250-259**. **See** the ALJ decision at page 6. **See AR 28**. There is no indication that the ALJ either considered her more recent statement found in **Exhibit 15E. See AR 302-308**. There is no discussion in the opinion that the ALJ considered her most recent statement and either rejected it or not. Silence may be golden, but not with respect to the ALJ's decisions. This too is legal error.
> (underlining and boldface type in plaintiff's brief).

Plaintiff's briefs contain no summary of the record, nor does she discuss in the context of this argument the statements provided by Ms. Sneed or articulate any reasons why the ALJ erred in not discussing the second statement. More notably, plaintiff does not argue the ALJ erred with respect to Ms. Sneed's March 2013 statement. For this reason, whether the ALJ provided reasons germane to Ms. Sneed for rejecting the March 2013 statement, see Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993), is not an issue before the court. Plaintiff again appears to rely solely on the premise the failure to consider any evidence – in this instance Ms. Sneed's second statement –

14

is per se reversible error. The court will not repeat the reasons discussed above for rejecting this argument.

Ms. Sneed's second statement of September 2015 is contained in the record at Exhibit 15E. See CAR 302-308. Ms. Sneed reported that, at the time, claimant "[l]looks depressed, loses interest in everyday functioning, sits, sometimes mood swings to a better attitude towards life and she wants to perform but moves slow getting up can't stand for too long or walk a long distance." Id. at 303. Ms. Sneed also stated claimant no longer took care of children. See id. at 304. According to Ms. Sneed, as of September 2015 claimant was able to care for personal needs and grooming without assistance and take medicine and go to medical appointments without help or reminders. See id. Though Ms. Sneed stated claimant was "[n]ot interested in cooking," she stated claimant prepared her own meals, to include "cereal – sandwiches – hamburgers – pizza." Id. at 305. Somewhat inconsistently, Ms. Sneed stated claimant "[n]eed [sic] help with cooking." Ms. Sneed's statement that claimant went outside "[e]veryday – got children to watch," id., is also inconsistent with her statement, noted above, that claimant no longer took care of children, see id. at 304. According to Ms. Sneed, claimant was unable, as of September 2015, of walking more than 12 yards before needing to stop to rest. See id. at 307. She also stated claimant would have to rest 10 to 15 minutes before resuming. See id. Ms. Sneed further stated claimant could only pay attention for 20 minutes before getting irritated. See id. Ms. Sneed stated claimant was unable to finish what she started. See id. Ms. Sneed reported claimant required use of crutches, a cane, and a brace and/or splint "when she walks." Id. at 308.

In many respects, it appears Ms. Sneed's second statement reflects limitations more significant than those indicated by her first statement. In other respects, the reports are similar. Notably, Ms. Sneed's second statement contains several internal inconsistencies. To the extent the second report describes an individual more limited than described in the first report, the only logical explanation would be medical deterioration resulting in a degradation in capability. This explanation, however, finds no support in the record. Given the lack of any evidence suggesting deterioration, it is clear Ms. Sneed's second report is unreliable and, as such, was properly ignored as neither significant nor probative. See Vincent, 739 F.2d at 1394-95.

15

### E. **Vocational Expert Testimony**

At Step 5, the ALJ concluded claimant was not disabled because she could have performed other work existing in significant numbers in the national economy. See CAR 33. The ALJ based this finding, in part, on testimony from a vocational expert based on hypothetical questions assuming the residual functional capacity found by the ALJ. See id. The ALJ accepted the vocational expert's testimony claimant could have performed jobs such as addressing clerk and food and order beverage clerk, and concluded such testimony was consistent with the information contained with the Dictionary of Occupational Titles. See id.

Plaintiff argues the ALJ erred by failing to make any "explicit findings with respect to the impact of the claimant's depression and anxiety on her ability to work." According to plaintiff, once the ALJ finds an impairment severe, as the ALJ did here with respect to claimant's anxiety and depression, see CAR 25, "the ALJ is obligated to explain how the claimant's depressive symptoms does or does [sic] not limit hers [sic] ability to work." This argument is unpersuasive because it misstates the law. The claimant has the initial burden of proving the existence of a disability, see Terry, 903 F.2d at 1275, not the Commissioner. Moreover, the ALJ accounted for claimant's depression and anxiety by finding she would have been limited to simple repetitive tasks involving limited contact with supervisors and co-workers. See CAR 27.

Plaintiff also appears to argue the ALJ erred with respect to her finding claimant required infusions. The court does not agree. According to plaintiff: "The current evidence does not support the ALJ's finding that she needs infusions. . . ." Plaintiff also states: "In fact the claimant is required to have infusions once a week." Plaintiff concludes: "This would significantly impact her ability to show up for work without an excessive amount of absentiism [sic]." Initially, the court observes plaintiff's argument is internally inconsistent in that, on the one hand, she disagrees with the ALJ, stating the evidence does not support the need for infusions but, on the other hand, agrees with the ALJ, stating claimant required infusions. Moreover, plaintiff's argument is belied by the ALJ's hearing decision, which reflects the ALJ accounted for

///

absenteeism associated with infusions.  See CAR 27 (finding claimant would have been absent from work because of her need for infusions).

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

    1.    Plaintiff's motion for summary judgment (Doc. 25 and 30) are denied;

    2.    Defendant's motion for summary judgment (Doc. 27) is granted;

    3.    The Commissioner's final decision is affirmed; and

    4.    The Clerk of the Court is directed to enter judgment and close this file.

Dated:  January 3, 2019

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE